Bertha **BOBO**, now known as Bertha Bobo Sloan, Administratrix of the Estate of George Bobo, Deceased, Plaintiff,

v.

**PAGE ENGINEERING COMPANY,**
Defendant.

Civ. No. 66–679.

United States District Court
W. D. Pennsylvania.

Nov. 7, 1967.

Martin E. Cusick, of Cusick, Madden, Joyce, Acker & McKay, Sharon, Pa., for plaintiff.

John G. Buchanan, Jr., of Buchanan, Ingersoll, Rodewald, Kyle & Buerger, Pittsburgh, Pa., for defendant.

## OPINION AND ORDER

MARSH, District Judge.

In this suit, the plaintiff-administratrix seeks damages for the alleged breach of express and implied warranties which she claims arises from parol representations made by defendant in connection with a written conditional sales contract (contract) under which the Estate of George Bobo (Estate) purchased from the defendant a new Model 728 Page Walking Dragline (the 728), delivery of which was tendered to the Estate on or about May 9, 1960. The sale was negotiated for the Estate by Robert Bobo, plaintiff's son, who was in charge of the Estate's coal mining operations during the period relevant to this suit.

In a second cause of action plaintiff seeks an accounting of the proceeds of a two-stage transaction occurring in March, 1963, by which the defendant acquired a used Model 621S Page Walking Dragline (the 621) by bill of sale from the Estate and subsequently transferred it to Miller-McKnight coal company (Miller-McKnight) on a lease agreement (lease) with a separate purchase option. Robert Bobo also negotiated this transaction for the Estate.

Defendant moves for summary judgment on both claims. With respect to the first claim, it asserts that no action can arise for breach of warranties because any action predicated on the alleged warranties is barred by the applicable statute of limitations. This action was filed on June 6, 1966, more than six years after defendant tendered delivery of the 728 to the Estate. As to the second claim, it denies that plaintiff is entitled to an accounting for the transactions involving the 621, contending that plaintiff sold defendant the 621 outright and acquiesced in the allocation of the $70,000 defendant allowed for the 621 to the cancellation of certain of the Estate's prior-existing debts. Plaintiff contends that defendant was in reality her agent in effectuating a sale of the 621 to Miller-McKnight and that the two-part transaction was in fact undertaken as a financing arrangement.

In our opinion, the defendant is entitled to summary judgment on both claims. Her action for breach of warranties relating to the purchase of the 728 is barred by the applicable statute of limitations; and her claim for an accounting

falls since it is clear that she made an outright sale of the 621 to defendant. We do not find a genuine issue as to any material fact with respect to either claim. Rule 56(c), Fed.R.Civ.P.

The parties agree that Pennsylvania law governs and that the applicable statute of limitations is § 2–725 of the Uniform Commercial Code, 12A Purdon's Pa.Stat.Ann. § 2–725, as amended,[1] which provides that an action for breach of any contract for sale must be commenced within four years after the cause of action has accrued. The statute provides that a cause of action accrues when the breach occurs and that a breach of warranty occurs when tender of delivery is made. There is no dispute that tender of delivery of the 728 was made on or about May 9, 1960 (see ¶ 5 of plaintiff's amended complaint, and ¶ 5 of defendant's second defense in its answer), and that this action was filed more than six years later.

Plaintiff argues that she is within the exception granted by § 2–725(2) "that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered." She contends that through her agent, Robert Bobo, she communicated to the defendant certain performance characteristics she wanted in a dragline, and that defendant through its president, John W. Page, and other officers and agents, expressly represented that the 728 would meet these performance standards. Plaintiff contends that these representations gave rise to an express warranty and to implied warranties of merchantability and of fitness for particular purpose. She argues that these warranties extended to future performance, and that discovery of the breach awaited a period of operations necessary to determine the 728's performance. Since she took no part in the transaction herself,[2] plaintiff relies on the deposition of Robert Bobo, which defendant does not controvert.

██ Even assuming that these warranties were prospective, we think that plaintiff cannot invoke the exception. The only material fact is when Robert Bobo discovered the breach. That date is not specified precisely in Bobo's deposition; however, it is not disputed that the breach was discovered within a few months of the time the Estate commenced to operate the 728 and considerably more than four years prior to the filing of the complaint (Deposition of Robert Bobo, p. 34). We are satisfied that this is "a logical inescapable conclusion" from Robert Bobo's testimony. Cf. Longo v. Pittsburgh and Lake Erie Railroad Co., N.Y.C.Sys., 355 F.2d 443, 444 (3d Cir. 1966).

Plaintiff further argues that § 2–725 (4) "does not alter the law on tolling of

---

1. "§ 2–725. Statute of Limitations in Contracts for Sale

   "(1) An action for breach of any contract for sale must be commenced within four years after the cause of action has accrued. By the original agreement the parties may reduce the period of limitation to not less than one year but may not extend it.

   "(2) A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered.

   "(3) Where an action commenced within the time limited by subsection (1) is so terminated as to leave available a remedy by another action for the same breach such other action may be commenced after the expiration of the time limited and within six months after the termination of the first action unless the termination resulted from voluntary discontinuance or from dismissal for failure or neglect to prosecute.

   "(4) This section does not alter the law on tolling of the statute of limitations nor does it apply to causes of action which accrued before this Act becomes effective. As amended 1959, Oct. 2, P.L. 1023, § 2."

2. Deposition of Bertha Arcie Sloan (Bertha Bobo Sloan), pp. 26–28.

the statute of limitations * * * " and urges that the facts and circumstances which followed plaintiff's purchase of the 728 tolled the running of the statute of limitations.

Briefly summarized, the deposition of Robert Bobo discloses that he and other employees in the Estate's mining operations were greatly dissatisfied by the performance of the 728 from the outset and that Bobo complained almost immediately, and thereafter continually for a period of nearly two years, about the 728's failings. There is evidence that many in the defendant's organization, including its president, knew of these complaints and that defendant sent its servicemen to try to remedy things. There is evidence that a number of repairs were made to the machine and that a number of original parts failed and were replaced, at the expense of the Estate. There is evidence that late in 1961 or early in 1962, defendant's president acknowledged that there was something wrong with the 728 and arranged for an additional engine to be installed on it, again at plaintiff's expense, after which the 728's performance improved somewhat.

Plaintiff urges that by the "weight of authority" it is recognized that "the Statute of Limitations is tolled so long as the seller insists that the defects in the articles sold can be repaired and is attempting to do so." (Plaintiff's brief, p. 7, quoting 46 Am.Jur., Sales, § 728, at p. 853.) In support, plaintiff cites a collection of cases from other jurisdictions, including Heath v. Moncrief Furnace Co., 200 N.C. 377, 156 S.E. 920, 75 A.L.R. 1082 (1931), the authority cited by American Jurisprudence and the annotated case in 75 A.L.R. 1082.

█ █ Plaintiff cites no case indicating that this rule is recognized in Pennsylvania. Neither party has come forward with a Pennsylvania appellate decision adopting or rejecting the rule. The only Pennsylvania case called to our attention is Lewis v. Jacobson, 30 Pa.Dist. & Co.R.2d 623 (1962), in which the court rejects somewhat analogous facts as insufficient to toll the statute of limita-

tions under Pennsylvania law. While we are not bound by this opinion and may independently find the law of the state in the absence of a decision of its highest court, proper regard is to be given to the opinion of a lower Pennsylvania court, Commissioner v. Estate of Bosch, 387 U. S. 456, 465, 87 S.Ct. 1776, 18 L.Ed.2d 886 (1967). The rule, moreover, does not appear to be one generally recognized by a majority of jurisdictions. (See: 75 A.L.R., supra.) For these reasons, we decline to recognize the stated rule as Pennsylvania law. The statute of limitations was not tolled.

With respect to the second cause of action, plaintiff alleged (¶¶ 10 through 15 of her amended complaint) that she authorized the defendant to sell the Estate's 621 and that the defendant sold the 621 and received payment of $70,000. Plaintiff further alleges that in violation of the defendant's oral agreement to sell this property for the Estate, defendant retained the proceeds of the sale and applied them to prior debts of the Estate without plaintiff's consent or authority and in disregard of plaintiff's demand for payment of the $70,000. Defendant denies these allegations and avers that the plaintiff sold the 621 outright to defendant for $70,000. In support and denial of these allegations, we consider the deposition of Robert Bobo, who negotiated this transaction for the Estate, and an affidavit filed by each party.

█ It is well established since the 1963 amendment to Rule 56(c) that where the depositions and affidavits pierce the pleadings and reveal that there is no genuine issue as to any material fact, summary judgment will not be denied merely because the pleadings create the appearance of a dispute. A litigant is not to be sheltered against summary judgment by the allegations of his pleading. Robin Construction Company v. United States, 345 F.2d 610, 614–615 (3d Cir. 1965).

The negotiations which preceded the transfer of the 621 are disclosed in Robert Bobo's deposition and the affidavits of Frederick J. Stedman, Secretary of

Page Engineering Company, and Charles Miller, co-partner in Miller-McKnight. It is not disputed (1) that Robert Bobo on or about March 1, 1963, attempted to sell the 621 to Miller-McKnight but gave up when he could not finance the sale (Dep., p. 37); (2) that Miller and his co-partner, McKnight, since deceased, went to Chicago on or about March 19, 1963, and discussed financing the purchase of the 621 with defendant's president and another officer or employee; and (3) that Miller-McKnight later acquired the 621 from the defendant.

The steps of the transactions as described in the affidavits are confirmed by the relevant documents, which are all of record. On March 13, 1963, plaintiff, for the Estate, executed a bill of sale to defendant for the 621 for the stated consideration of $70,000. On March 19, 1963, defendant, by letter, rendered a statement confirming the purchase and advising that it had "applied this sum to your various accounts with us * * *". This was followed by a listing of items of the Estate's indebtedness to the defendant and the amount credited by defendant to each item.

On March 20, 1963, defendant executed a lease agreement leasing the 621 to Miller-McKnight for a term of 30 months at an aggregate rental of $97,900 in equal monthly installments of $3,263.33. By letter dated August 14, 1964, over the signature of defendant's president, John W. Page, defendant confirmed "our verbal agreement dated March 20, 1963", which, as stated in the letter, was defendant's agreement to offer to sell Miller-McKnight the 621 for $5 upon completion of the lease "provided that all provisions of said lease have been adhered to and that all payments have been made." [3]

■ As stated, Robert Bobo negotiated the transaction with defendant for the Estate. Nothing in his deposition (Dep., pp. 36–39, 65–67) controverts the material facts as they appear in the affidavits or in the documents themselves. Nothing anywhere in the record supports plaintiff's bare allegations in her complaint that defendant was acting as plaintiff's agent. Nothing in the record controverts defendant's proof that it acquired the 621 by purchase and credited the consideration to the Estate's prior indebtedness with the acquiescence of plaintiff and Robert Bobo. Nothing presented by the plaintiff justifies her claim to an accounting.

Indeed, by the defendant's letter of March 19, 1963, with its listing of plaintiff's prior debts and the portion of the $70,000 defendant credited to each, plaintiff would already seem to have received the accounting she demands. Everything in the record is consistent with a conclusion that the Estate accepted these credits and made no objection to them. Plaintiff took no part in the transaction herself,[4] but Robert Bobo who did, admitted that he had, at best, a mere hope that he would receive some cash from the transaction and never in fact made any demand of the defendant to be paid any part of the consideration in cash (Dep., pp. 66–67, 69).

■ There are no issues of credibility for the trier of fact, since we accept all of Robert Bobo's statements as true. "* * * [A] party is not entitled to a denial of a motion for summary judgment on the basis of a mere hope that evidence to support his claim will develop at trial * * *." Taylor v. Rederi A/S Volo, 374 F.2d 545, 549 (3d Cir. 1967), citing International Longshoremen's and Warehousemen's Union v. Kuntz, 334 F.2d 165, 169, n. 5 (9th Cir. 1964).

There being no genuine issue as to any material fact, we are satisfied that plaintiff is not entitled to an accounting for the proceeds of the sale of the 621.

An appropriate order will be entered.

3. The affidavit of Charles Miller, executed August 24, 1967, discloses that "the present balance is approximately $13,053.42. The payments have not always been current."

4. Deposition of Bertha Arcie Sloan (Bertha Bobo Sloan), pp. 38, 48.